[Cite as *In re Allen*, 2010-Ohio-6699.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: MEGAN M. ALLEN

MEGAN M. ALLEN

      Applicant

Case No. V2009-40439

Commissioners:
Karl C. Kerschner, Presiding
Elizabeth Luper Schuster

OPINION OF A TWO
COMMISSIONER PANEL

{¶1}The appeal before this panel concerned whether the applicant, Megan Allen, qualified as a victim of criminally injurious conduct. The applicant did not establish, by a preponderance of the evidence, that she was a victim of criminally injurious conduct. Therefore, the decision of the Attorney General is hereby affirmed.

*I. Procedural History*

{¶2}On July 14, 2008, the applicant, Megan Allen, filed a compensation application as the result of an alleged sexual assault which occurred on May 18, 2008. On November 10, 2008, the Attorney General issued a finding of fact and decision determining that the applicant had not proven she was a victim of criminally injurious conduct. The Attorney General related that its investigation revealed that there were conflicting statements concerning the alleged incident and, therefore, law enforcement had insufficient evidence to bring charges against the alleged offender. On December 1, 2008, the applicant submitted a request for reconsideration. On April 30, 2009, the Attorney General rendered a Final Decision finding no reason to modify its initial decision. On May 29, 2009, the applicant filed a notice of appeal from the April 30, 2009 Final Decision of the Attorney General.

{¶3}On November 5, 2009, this panel issued an order granting the applicant's motion for expenditure of funds to obtain an expert evaluation from Trinka P. Porrata to analyze the toxicology report compiled after the alleged sexual assault and to offer expert testimony concerning drugs found in the applicant's system.

{¶4}Hence, a hearing was held before this panel of commissioners on March 3, 2010 at 1:15 P.M.

*II. Applicant's Position*

{¶5}The applicant, Megan Allen, via telephone, her attorney, Kimberley Wells and Assistant Attorney General, Lyndsay Nash, representing the state of Ohio, attended the hearing and presented testimony and oral argument for this panel's consideration. The applicant asserted that on May 18, 2008, she was the victim of a drug-facilitated sexual assault.  Accordingly, the applicant was a victim of criminally injurious conduct and should qualify to receive an award of reparations for the economic loss she suffered.

*III. Attorney General's Position*

{¶6}The applicant has failed to meet her burden to prove by a preponderance of the evidence that she was a victim of criminally injurious conduct.   From a review of the police report the applicant is unclear what transpired on the night of the incident. Furthermore, the alleged offender passed a polygraph test conducted by police which revealed any sexual acts were consensual.  Finally, the police who investigated this incident concluded lack of evidence, discrepancies, and conflicting statements provided no basis for a prosecution in this matter.  Accordingly, the Attorney General's Final Decision should be affirmed.

*IV. Testimony and Argument*

{¶7}The applicant called Residential Services Director of Domestic Violence Project in Stark County, Denise Hollenbach to testify via telephone. At the time of the applicant's alleged sexual assault, Ms. Hollenbach, worked at the Medina/Summit County Rape Crisis Center. Ms. Hollenbach assisted the applicant with her interaction with law enforcement. Ms. Hollenbach related that the law enforcement case was left open, but no further action would be taken unless the applicant remembered more facts surrounding the incident. According to Ms. Hollenbach, lapses in memory, although normal in many rape situations, make it difficult for law enforcement to conduct a meaningful investigation. Finally, Ms. Hollenbach testified based upon her training and years of contact with rape victims, the applicant exhibited symptoms of Post Traumatic Stress Disorder (PTSD).

{¶8}Upon cross-examination, Ms. Hollenbach related that she was aware that the alleged suspect was administered a polygraph examination by police and passed. She also was aware that it was the police's opinion that the suspect was telling the truth. Ms. Hollenbach conceded that she had no contact with Ms. Allen on the night of the incident and was unaware of her level of impairment, if any.

{¶9}Upon redirect examination, Ms. Hollenbach testified that she did not believe a polygraph test was reliable in a rape situation. Whereupon, her testimony was concluded.

{¶10}Megan Allen testified via telephone. Ms. Allen related that on May 18, 2008, she went to a bar with friends. During the course of the evening, from 10:00 P.M. to 2:30 A.M., she consumed numerous shots of firewater, a 100 proof alcoholic beverage. She stated she met the suspect in the bar parking lot after the bar closed and drove him to his apartment. The applicant recalls that, after they arrived at his apartment, he opened her car door for her to exit her vehicle. The next thing she remembers is being in the suspect's apartment. She recalled they were on the couch and they were talking and subsequently he was kissing her. Ms. Allen testified the suspect offered her nothing to drink but she smoked a cigarette with the suspect. That is the last thing she remembers on the couch. Her next recollection was being in a

dark room.   She stated the sexual assault occurred in the dark room.   Ms. Allen stated she was unable to move or speak and believed the suspect was on top of her.   She does specifically recall the suspect yelling at her and instructing her to leave. Subsequently, she left the apartment, entered her car, and spoke to her friends on her cell phone.   A short time later her friends found her in the parking lot of the suspect's apartment.   Subsequently, she was transported to St. Thomas Hospital.   At the hospital she had a brief conversation with a police officer.   She followed up with law enforcement, and, although an investigation ensued, no prosecution resulted.   Ms. Allen stated that she was in counseling for four or five sessions and did not recall what the counselor's diagnosis was.

{¶11}Upon cross-examination, applicant stated she smoked a tobacco cigarette with the suspect.   After further questioning she stated that a police officer stated she smoked a blunt, which is a marijuana-based cigarette.   On redirect, the applicant testified that she "blacked out" after smoking the marijuana cigarette with the suspect.

{¶12}When questioned by the panel of commissioners, the applicant testified that she was smoking one of her cigarettes.   Also, she voluntarily ingested the alcohol shots.   She asserted she did not know she was smoking marijuana.   However, she firmly asserted she was not highly intoxicated.   She related she could remember getting out of the vehicle, but had no recollection of entering the apartment. Furthermore, she stated she did not recall what she told police on the night of the incident.

{¶13}On redirect examination, Ms. Allen stated she recalled the sexual assault when it was occurring.

{¶14}Finally, the applicant called Trinka Porrata to testify via telephone. Initially the witness testified as to her background, both educationally and professionally. Ms. Porrata was offered as an expert witness in the field of drug-facilitated sexual assault. The Attorney General expressed no objection and the panel granted her expert status.

{¶15}The witness was questioned with respect to Applicant's Exhibit 1, a report dated November 22, 2009 that she had prepared. Ms. Porrata related that she reviewed the police report, statements by witnesses, the investigator's notes, the records concerning Megan Allen's medical examination on May 18, 2008, the toxicology report, and that she conducted a telephone interview with Megan Allen in order to produce the report in question. Ms. Porrata testified that a combination of alcohol and marijuana would intensify their affects. Furthermore, Ms. Porrata related that the inconsistencies in statements can arise when one is under the influence. Marijuana and alcohol can inhibit motor functions and impair one's ability to give consent and make good decisions. Ms. Porrata opined that Megan Allen was substantially impaired and that the suspect knew or should have known that she was, and accordingly that the applicant may not have been able to give her consent to sexual relations. Whereupon, Ms. Porrata's testimony was concluded. The applicant moved that Applicant's Exhibit 1 be admitted into evidence. The state expressed no objection.

{¶16}In closing, the applicant asserted that criminally injurious conduct has been established by a preponderance of the evidence. The applicant's voluntary consumption of alcohol coupled with her unsuspected use of marijuana impaired her to the extent that she could not give her consent to the sexual activity which occurred. Applicant asserted the suspect's conduct constituted rape as defined by R.C. 2907.02, sexual battery as defined by R.C. 2907.03, gross sexual imposition as defined by R.C. 2907.05, and sexual imposition as defined by R.C. 2907.06. The applicant urges this panel to follow the 12th District Court of Appeals holding in *State v. Martin* (Aug. 14, 2000), 12th Dist. No. CA99-09-026, concerning mental or physical condition based on voluntary intoxication. The applicant stated it was more likely than not that she was

substantially impaired, and that the offender knew or reasonably should have known that she could not consent to sexual conduct.

{¶17}The Attorney General relied heavily on the fact that this case was reviewed both by police and the prosecutor's office and they came to the same conclusion that a crime was not committed. In order to find a crime, the applicant must prove she was substantially impaired, however, the applicant by her own testimony at this hearing and based on her statements to police did not indicate she was highly intoxicated or impaired. Accordingly, the Attorney General's Final Decision should be affirmed since the applicant failed to prove by a preponderance of the evidence that she was a victim of criminally injurious conduct. Whereupon, the hearing was concluded.

*V. Controlling Law and Precedent*

{¶18}R.C. 2743.51(C)(1) in pertinent part states:

"(C) 'Criminally injurious conduct' means one of the following:

"(1) For the purposes of any person described in division (A)(1) of this section, any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death, or would be so punishable but for the fact that the person engaging in the conduct lacked capacity to commit the crime under the laws of this state."

{¶19}Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶20}Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." In order to establish that an applicant is a victim of criminally injurious conduct, the applicant has the burden to prove by a preponderance of the evidence that:   1) the criminal conduct occurred or was attempted; 2) the criminal conduct posed a substantial threat of personal injury or death; and 3) the criminal conduct was punishable by fine, imprisonment or death.*In re Gradison*, V78-3385jud (1-13-82). Furthermore, the uncorroborated statement of the applicant does not constitute sufficient proof, by a preponderance of the evidence, to establish the criminally injurious conduct.   *In re Minadeo,* V79-3435jud (10-31-80).

{¶21}The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact.   *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus.   The court is free to believe or disbelieve, all or any part of each witness's testimony.   *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548.

*VI. Panel's Determination*

{¶22}The sole question before us is whether the applicant met her burden of proof, to establish by a preponderance of the evidence that she was a victim of criminally injurious conduct.   To that end, the applicant has the burden to prove, by a preponderance of the evidence, that a crime was committed or was attempted.   The applicant asserts she was a victim of rape, sexual battery, gross sexual imposition, or sexual imposition.   For the purposes of this decision we will focus on the offense of sexual imposition.   R.C. 2907.06 in pertinent part states:

{¶23}"(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

"(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

"(2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired.

"(3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact."

{¶24}The applicant contends she was unable to give her consent due to her voluntary consumption of alcohol and her smoking of a marijuana blunt with the suspect. From review of the information contained in the claim file and the testimony presented at the hearing we find the applicant's recollections of the incident are inconsistent. For example, with respect to smoking marijuana, applicant testified when questioned by her attorney that she did not know what she was smoking; upon cross-examination by the Attorney General she stated she smoked a tobacco cigarette with the suspect, and was later informed by police that it was a marijuana blunt; and finally, questioning by the panel commissioners revealed that it was a cigarette from her pack of cigarettes that she smoked. This is merely one example of inconsistent statements made by the applicant throughout her testimony when compared to evidence contained in the claim file.

{¶25}While the applicant's expert witness, Trinka Porrata, offered her opinion that the applicant was drunk at the time of the incident, the applicant testified she was not highly intoxicated and felt confident enough in her driving skills to offer the suspect a ride to his apartment. Accordingly, we do not find the applicant's testimony to be persuasive.

{¶26}Moreover, the alleged offender's conduct on the evening at issue was subject to evaluation of scrutiny by law enforcement, which determined that no crime had been committed. Upon review of the police reports contained in the file, the offender was neither charged with any crime, nor indicted by a grand jury nor prosecuted for any offense in connection with the incident of May 18, 2008. The file reflects that the suspect cooperated with police, allowed a search of his residence, engaged in questions and voluntarily offered to take a polygraph examination which he passed. Consequently, we find no evidence points to the fact that the suspect engaged in criminal activity or committed some criminal act.

{¶27}Therefore, the applicant has failed to meet her burden of proof with respect to establishing criminally injurious conduct by a preponderance of the evidence. Therefore, the April 30, 2009 Final Decision of the Attorney General is affirmed.

_____
KARL C. KERSCHNER
Presiding Commissioner


_____
ELIZABETH LUPER SCHUSTER
Commissioner

**Randi Ostry, Commissioner, Dissenting Opinion:**

{¶28}I respectfully dissent. I disagree with the majority's assessment of the applicant. I believe the majority has failed to consider the testimony of Denise Hollenbach. Ms. Hollenbach, a victim's advocate with years of experience interviewing rape victims, came to the conclusion that the applicant suffered from Post Traumatic Stress Disorder. As such, the inconsistencies in the applicant's recollection of the events of the evening are common for one suffering from PTSD. Furthermore, the majority fails to consider that the applicant consumed alcohol and drugs on the night of the incident which would cloud her recollections. The offender's plan of taking advantage of the applicant sexually was enhanced by the applicant's impaired state and consequently her inability to recall exactly what transpired.

{¶29}The offender's successful passage of the polygraph test should have no bearing on the issue of criminally injurious conduct. Even assuming for the sake of argument that the applicant acquiesced to the offender's sexual advances, that does not resolve the issue of consent. The offender might have perceived that the applicant was agreeable to his sexual advances and consequently passed the polygraph test. However, this does not resolve the issue of whether the applicant consented to the activity. Black's Law Dictionary defines consent as: "voluntary agreement by a person in the possession and exercise of sufficient mental capacity to make an intelligent choice to do something proposed by another. It supposes a physical power to act, a moral power of acting, and a serious, determined, and free use of these powers. . . As used in the law of rape 'consent' means . . .an exercise of intelligence based on knowledge of its significance and moral quality and there must be a choice between resistance and assault."

{¶30}The applicant testified after smoking the "blunt" she was unable to move and unable to speak. The applicant's expert witness, Trinka Porrata, testified that based on the applicant's consumption of alcohol coupled with the ingestion of marijuana her ability to make a rational or coherent decision was compromised. Therefore, I find based on the evidence presented at the hearing that the applicant did not possess the ability to consent to the sexual acts which occurred. At the minimum, the applicant was a victim of sexual imposition and thus qualifies as a victim of criminally injurious conduct as defined by R.C. 2743.51(C)(1). Therefore, I respectfully dissent.

_____
RANDI M. OSTRY
Commissioner



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: MEGAN M. ALLEN

MEGAN M. ALLEN

      Applicant

Case No. V2009-40439

Commissioners:
Karl C. Kerschner, Presiding
Elizabeth Luper Schuster

ORDER OF A TWO
COMMISSIONER PANEL

IT IS THEREFORE ORDERED THAT

{¶31}1)   The April 30, 2009 decision of the Attorney General is AFFIRMED;

{¶32}2)   This claim is DENIED and judgment is rendered in favor of the state of Ohio;

{¶33}3)   Costs are assumed by the court of claims victims of crime fund.

_____
KARL C. KERSCHNER
Presiding Commissioner


_____
ELIZABETH LUPER SCHUSTER
Commissioner

ID #I:\VICTIMS\2009\40439\V2009-40439.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Stark County Prosecuting Attorney and to:


Filed 7-16-10
Jr. Vol. 2276, Pg. 208
Sent to S.C. Reporter 8-5-11